N.Y.S.D. Case #
16-cv-2823(JSR)

17-2398 (L)
*4 Pillar Dynasty LLC v. New York & Co., Inc.*

# In the
# United States Court of Appeals
## For the Second Circuit

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Aug 08 2019

August Term, 2018

(Argued: August 28, 2018   Decided:  August 8, 2019)

Docket Nos. 17-2398 (L), 17-2399 (XAP)

4 PILLAR DYNASTY LLC, REFLEX PERFORMANCE RESOURCES INC.,

*Plaintiffs-Appellees–Cross-Appellants*,

–v.–

NEW YORK & COMPANY, INC., NEW YORK & COMPANY STORES, INC.,

*Defendants-Appellants–Cross-Appellees.*

B e f o r e :

LYNCH, CARNEY, AND DRONEY, *Circuit Judges.*

Defendants-Appellants–Cross-Appellees New York & Company, Inc., and New York & Company Stores, Inc. ("Defendants") appeal from a judgment of the United States District Court for the Southern District of New York (Rakoff, *J.*) awarding Plaintiffs-Appellees–Cross-Appellants 4 Pillar Dynasty LLC and Reflex Performance Resources Inc. ("Plaintiffs") the gross profits earned by Defendants from sales of yoga clothing and activewear that infringed Plaintiffs' "Velocity" trademark. Plaintiffs, in

CERTIFIED COPY ISSUED ON 08/08/2019

turn, cross-appeal from the District Court's decision, after post-trial briefing, to amend the judgment by removing the trebled portion of the profits award.

We discern no clear error in the District Court's determination that Defendants' infringement was willful and in its award to Plaintiffs of the gross profits derived by Defendants from their infringement. We rule further that the court did not err by amending the judgment to remove the trebled portion of the profits award. We also take the opportunity to clarify that, under our precedent in *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532 (2d Cir. 1992), a plaintiff prosecuting a trademark infringement claim need not in every case demonstrate actual consumer confusion to be entitled to an award of an infringer's profits.

We vacate, however, the District Court's award of attorney's fees and prejudgment interest to Plaintiffs and its determination that this was an "exceptional" case under the Lanham Act. While this appeal was pending, we held that the standard for determining an "exceptional" case under the Patent Act, *see Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014), applies also to cases brought under the Lanham Act, *see Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519 (2d Cir. 2018). Because the District Court was not in a position to apply this holding when it ruled on this issue, we remand the case to the District Court to allow it to apply the *Octane Fitness* standard in the first instance.

AFFIRMED in part and VACATED and REMANDED in part.

——————

DAVID H. BERNSTEIN (Jared I. Kagan, *on the brief*), Debevoise & Plimpton, LLP, *for Defendants-Appellants–Cross-Appellees.*

AARON J. SOLOMON (Darren Oved, Michael Kwon, *on the brief*), Oved & Oved LLP, New York, NY, *for Plaintiffs-Appellees–Cross-Appellants.*

——————

2

CARNEY, *Circuit Judge*:

In this trademark infringement case brought under the Lanham Act, 15 U.S.C. § 1111 *et seq.*, Defendants-Appellants–Cross-Appellees New York & Company, Inc., and New York & Company Stores, Inc. (collectively, "Defendants" or "NY & C") appeal from a judgment of the U.S. District Court for the Southern District of New York (Rakoff, *J.*), entered after a jury trial, awarding Plaintiffs-Appellees–Cross-Appellants 4 Pillar Dynasty LLC and Reflex Performance Resources Inc. (collectively, "Plaintiffs") an amount equal to Defendants' gross profits from sales of yoga clothing and activewear that infringed Plaintiffs' "Velocity" trademark.

On appeal, Defendants contend primarily that the District Court erred in substantially denying their post-trial motions. They argue that (1) the evidence adduced at trial was insufficient to show that Defendants acted willfully in their infringing actions, a prerequisite for an award of disgorgement of profits; and that (2) to obtain such an award, Plaintiffs were required and yet failed to demonstrate actual consumer confusion. Defendants further contend that the District Court abused its discretion by concluding that this was an "exceptional" case under certain provisions of the Lanham Act, *see* 15 U.S.C. § 1117(a), and awarding Plaintiffs attorney's fees and prejudgment interest on the disgorgement award. For their part, on their cross-appeal, Plaintiffs argue that the District Court abused its discretion by amending the first-entered judgment to eliminate the trebled portions of its profits award.

We conclude that the District Court did not clearly err in determining that the Defendants' infringing acts were willful, as well as when it amended the initially-entered judgment to remove the trebled portion of the profits award. We further reject

3

Defendants' argument that Plaintiffs were required to demonstrate actual consumer confusion as a prerequisite to a profits award, and clarify that, under the Lanham Act, a district court may award to a plaintiff trademark holder the profits made by a willful infringer, without requiring that the plaintiff demonstrate actual consumer confusion. *See George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532 (2d Cir. 1992). We therefore affirm the District Court's judgment in these respects.

We vacate, however, the District Court's award of attorney's fees and prejudgment interest to Plaintiffs and its determination that this was an "exceptional" case under the Lanham Act. While this appeal was pending, we held that the standard for determining an "exceptional" case under the Patent Act, *see Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014), applies also to cases brought under the Lanham Act, *see Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519 (2d Cir. 2018). Because the District Court applied a prior standard, under which a finding of willfulness determined the right to attorneys' fees absent mitigating circumstances, and was not in a position to apply our holding concerning *Octane Fitness*, we remand the cause to the District Court to allow it to apply the more flexible *Octane Fitness* standard in the first instance.

## BACKGROUND[1]

Reflex Performance Resources Inc. ("Reflex"), a company owned by Behrooz Hedvat and his two brothers, designs and sells women's activewear under the

---

[1] The following statement of facts is taken from the testimony presented at the four-day jury trial.

4

registered trademark "Velocity." Reflex's offerings include a line of leggings, capris, sports bras, tank tops, and hooded sweatshirts. Acting through the related entity 4 Pillar Dynasty LLC ("4 Pillar"),[2] Hedvat applied to register the Velocity trademark with the U.S. Patent and Trademark Office ("USPTO") in 2012.  In 2014, the USPTO approved the trademark for use in "clothing and performance wear."

 Reflex does not operate any brick-and-mortar stores—rather, it sells its clothing wholesale to retailers such as TJ Maxx, Marshalls, Ross, and Foot Locker, and to customers online, through its own website and third-party sites such as Amazon. Reflex maintains a Manhattan showroom, where prospective wholesale buyers can view a "look book" and examine samples of Reflex's products.

NY & C is a specialty women's apparel retailer operating hundreds of retail stores across the United States. It sells branded clothing both through its stores and its website. In 2016, Reflex and 4 Pillar sued NY & C for trademark infringement, alleging that an NY & C product line of women's activewear that it labelled "NY & C Velocity" infringed the "Velocity" trademark controlled by 4 Pillar and licensed to Reflex.

The case went to a trial by jury.[3] Plaintiffs called Hedvat as their sole witness. He testified that, at some point in 2015, a potential customer came to his office and asked

---

[2] Like Reflex, 4 Pillar is an entity wholly owned by Hedvat and his two brothers. It was created to hold several trademarks, including the Velocity mark at issue here. After securing the Velocity mark, 4 Pillar licensed it exclusively to Reflex. 4 Pillar does not design or produce the apparel at issue in this case—that is done solely by Reflex.

[3] The jury was charged with deciding only whether Defendants had infringed Plaintiffs' trademark; as an advisory matter, it was also asked to render a non-binding verdict on the question of willfulness. *See* Fed. R. Civ. P. 39(c)(1) (permitting court to "try any issue with an

him if he had licensed the "Velocity" mark to NY & C. Hedvat replied that he had not. He told the jury that he was "extremely surprised" by the question, and that it prompted him to visit NY & C's website. App'x 250.

There, Hedvat discovered the "NY & C Velocity" product line and formed the belief that the line infringed his companies' Velocity trademark. In his view, Defendants were selling the "exact" same type of products as his company; marketing them to the same demographic groups at a similar price; and unlawfully using the Velocity trademark to do so. App'x 253. Hedvat testified that, acting through counsel, he demanded that NY & C cease and desist from selling these products under the "NY & C Velocity" name and they had not done so.[4]

Hedvat conceded that Reflex's sales of Velocity products actually increased between 2014 and 2016, including during the period after which he discovered NY & C's allegedly infringing use. He further explained that, while other companies also had made arguably infringing use of the name, he was dealing with any possible infringement "one by one" and considered NY & C to be particularly important because it was "the big fish." App'x 275.

_____

advisory jury" if it is not triable as of right by a jury or on consent of the parties). Remaining questions of remedies that required additional fact-finding, including on the issue of willfulness, were determined by the district judge.

[4] On cross-examination, Hedvat could not remember whether his attorneys sent NY & C a pre-suit cease-and-desist letter, or merely filed this case. It is uncontested, however, that NY & C continued to sell the allegedly infringing products after the lawsuit was filed and they had been duly served.

After Hedvat concluded his testimony, the parties stipulated on the record that Defendants' gross profits from the sale of products bearing the NY & C Velocity trademark were $1,864,337.29. Plaintiffs then rested their case, and Defendants unsuccessfully moved for judgment as a matter of law. App'x 444. In an unexpected development following the court's denial of their motion, Defendants rested their case without presenting any evidence or testimony, and the case went to the jury.

This turn of events would have surprised observers because, in his opening statement, Defendants' counsel focused heavily on the expected testimony of two witnesses who would appear for NY & C: Christine Munley, NY & C's head of merchandising, and Yelena Monzina, the company's creative director. Counsel previewed that Munley would testify to never having heard of Reflex's "Velocity" branded apparel despite her extensive expertise in the market. For her part, Monzina would testify that, before the "NY & C Velocity" product line was released, she conducted a search that turned up Plaintiffs' Velocity trademark, as well as many other uses of the word "Velocity" in the apparel world. She would aver, however, that she saw no chance of consumer confusion between NY & C's and Reflex's product lines. During closing arguments, Defendants' counsel offered the jury no explanation for the failure to call these—or any other—witnesses.[5]

---

[5] Because, based on the representations in Defendants' opening, Plaintiffs had expected to cross-examine Monzina, the District Court offered their counsel an opportunity to read some of Monzina's deposition testimony into the record before the case went to the jury. They elected not to do so.

The jury found that NY & C had infringed Reflex's trademark. At the District Court's request, it also rendered an "advisory verdict" that NY & C's infringement was willful. App'x 522. In open court after these verdicts were rendered, the District Court announced its adoption of the willfulness verdict and advised that it would issue a written opinion setting forth its findings of fact and conclusions of law shortly. The court also informed the parties, without stating its reasoning, that it would direct that judgment be entered for three times the amount of the gross profits stipulated as related to the NY & C Velocity product line, which, as noted above, were over $1.8 million. Accordingly, the court entered judgment against NY & C in the amount of $5,593,011.87.

Upon Defendants' timely request, the District Court stayed execution of the judgment pending post-trial motion practice. Defendants then moved for judgment as a matter of law under Fed. R. Civ. P. 50(b) and to amend or alter the judgment under Fed. R. Civ. P. 59(e). They urged that: (1) there was no legal basis for an award of Defendants' profits because Plaintiffs had not introduced evidence of either willful infringement or actual consumer confusion; and (2) the Lanham Act did not authorize an award that trebled Defendants' related profits. Plaintiffs, in turn, moved for an additional award of attorney's fees and prejudgment interest.

Not long after, the District Court issued an "Opinion, Order, and Amended Judgment" setting forth both its decision on the parties' post-trial motions and its findings of fact and conclusions of law concerning the willfulness issue. *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 257 F. Supp. 3d 611 (S.D.N.Y. 2017). The court denied Defendants' Rule 50(b) motion, holding that the record contained sufficient

circumstantial evidence of willful infringement to support its award and that Second Circuit precedent did not require a showing of actual consumer confusion as a predicate for an award to a trademark holder of an infringer's profits. The court reconsidered its previous decision as to the trebling of the profits award, however, and reduced the sum awarded Plaintiffs from over $5.5 million to the stipulated gross profits sum of approximately $1.8 million. Finally, the court granted Plaintiffs' motion for attorney's fees and prejudgment interest. In a "Memorandum Order and Final Amended Judgment" issued approximately a month later, it awarded Plaintiffs $365,862.75 in attorney's fees and $110,950.91 in prejudgment interest. *4 Pillar Dynasty LLC v. New York & Co., Inc.*, No. 16-CV-2823 (JSR), 2017 WL 3738442, at *1 (S.D.N.Y. Aug. 9, 2017).

Defendants timely appealed, and Plaintiffs timely cross-appealed from the court's decision to strike the trebled portion of the profits award.

## DISCUSSION

### I. Evidence of Willful Infringement

To support an award of Defendants' profits to Plaintiffs, the District Court first had to find that their infringement of Plaintiffs' trademark was willful. *See George Basch Co.*, 968 F.2d at 1540 ("[A] plaintiff must prove that an infringer acted with willful deception before the infringer's profits are recoverable by way of an accounting."). Defendants urge that the District Court erred in concluding that Plaintiffs presented sufficient evidence of willfulness.[6]

---

[6] Plaintiffs contend (and the District Court concluded) that Defendants waived this argument because they failed to raise it as a ground for their Rule 50(a) motion for judgment as a matter of

We review for clear error a district court's determination of willfulness. *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995). A finding of fact is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Lehman Bros. Holdings Inc.*, 855 F.3d 459, 469 (2d Cir. 2017).

The factors that support a finding of willfulness in a Lanham Act case mirror those that apply in suits brought under the Copyright Act, 17 U.S.C. § 504(c): a plaintiff must show "(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard . . . or willful blindness." *Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005) (internal quotation marks omitted); *see also Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc.*, 507 F. App'x 26, 31 (2d Cir. 2013) (applying Copyright Act definition to Lanham Act claim) (summary order).

---

law, which Defendants filed after Plaintiffs concluded their case-in-chief. Defendants styled their later post-trial motion as one under Rule 50(b), but it is axiomatic that Rule 50(b) applies "only in cases tried to a jury that has the power to return a binding verdict"; it does not apply to "cases tried without a jury *or to those tried to the court with an advisory jury*." Wright & Miller, 9B Fed. Prac. & Proc. § 2523 (3d ed. 2018) (emphasis added). Defendants' putative Rule 50(b) motion did *not* challenge the jury's binding verdict that they had infringed Plaintiffs' mark; instead, in it, they objected to the District Court's independent decision to accept the jury's advisory finding on willfulness. *See DeFelice v. Am. Int'l Life Assurance Co. of N.Y.*, 112 F.3d 61, 65 (2d Cir. 1997) (noting that a trial court may consult with an advisory jury "so long as the court retains the ultimate responsibility for findings of fact and conclusions"); *Mallory v. Citizens Utils. Co.*, 342 F.2d 796, 797 (2d Cir. 1965) ("When an advisory jury is used, the review on appeal is from the court's judgment as though no jury had been present." (internal quotation marks omitted)). Accordingly, although Defendants' Rule 50(b) motion was improperly made, it has no bearing on our review of the District Court's findings of fact and conclusions of law, and we do not treat the argument as waived.

10

At trial, Plaintiffs presented no direct evidence of Defendants' state of mind in using the "NY & C Velocity" brand. In finding willfulness, the District Court, rather, relied on (1) Defendants' failure to stop selling the infringing goods after the action was filed; (2) Defendants' failure to call the witnesses who they had previously represented would testify regarding the company's decision to use the NY & C Velocity name; and (3) its determination that Defendants' "use of the word 'Velocity' on their products was, on its face, a blatant infringement." *4 Pillar Dynasty LLC*, 257 F. Supp. 3d at 620–22.

Defendants contend that, even when considered in combination, these factors are insufficient as a matter of law to support a finding of knowing or reckless infringement. They argue more particularly that their decision not to cease selling the infringing product after litigation began cannot support an inference of willful infringement, and that their decision not to call their identified witnesses was simply a strategic one, made only because, in their view, Plaintiffs had failed to meet their affirmative burden of proving willfulness.

Defendants' argument has some force. A defendant might decline to halt sales of a challenged product in a manner consistent with non-willful infringement, if careful due diligence in response to an infringement claim leads it to believe reasonably that it has not infringed. Even so, while the record evidence of willfulness here may be sparse, we cannot conclude that the District Court's finding—which was aligned with the unanimous determination of an advisory jury and rendered after witnessing the trial— was clearly erroneous.

The cases that Defendants rely on to support their challenge are readily distinguishable. For instance, in *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d

947 (7th Cir. 1992), the defendants presented evidence that their use continued only after both in-house and outside counsel conducted due diligence and concluded that the use was non-infringing. *Id.* at 962; *cf. Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 427–28 (S.D.N.Y. 2008) (no bad faith where defendants consistently asserted a fair use defense and the "differences between the products and their marks [were] manifest"), *aff'd*, 329 F. App'x 333 (2d Cir. 2009). Here, in contrast, the District Court reasonably found the similarities between Defendants' products and the "Velocity" trademark to be "blatant." Defendants provided no evidence to explain or justify their failure to cease selling the infringing sportswear once they received actual notice of Plaintiffs' allegations. Indeed, Defendants' argument at trial focused not on their own good faith entitlement to use the "NY & C Velocity" name, but on the purported weakness of Plaintiffs' mark and on attacking Hedvat's credibility and business practices.

Furthermore, although Defendants may have had no affirmative obligation to present evidence of *good* faith to avoid a finding of willfulness, the District Court permissibly drew an adverse inference from Defendants' failure to call the witnesses whom they themselves had highlighted as the centerpiece of the defense case. Defendants volunteered to the court and jury alike that their witnesses' testimony would establish, among other things, the subjective good faith of their creative director in selecting the "NY & C Velocity" name, and her diligence in first engaging in a "personal vetting process," and then ordering a third-party trademark search report. App'x 200–05. In light of its reasonable determination as to the "blatant" nature of Defendants' infringement, we can hardly say that the District Court clearly erred in drawing from the absence of these witnesses from trial the inference that their

12

testimony would have been "less than credible." *4 Pillar Dynasty LLC*, 257 F. Supp. 3d at 622; *see also United States v. Torres*, 845 F.2d 1165, 1169 (2d Cir. 1988) (trial court may use its discretion to give a missing witness instruction when "a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction," yet fails to call those witnesses).[7]

To be sure, the District Court was not *required* to make such an inference. Defendants make a colorable argument that they simply made a strategic decision to rest their case and rely on the inadequacy of Plaintiffs' evidence, and that no adverse inference can reasonably be drawn from that decision. On review for clear error, however, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Lehman Bros.*, 855 F.3d at 469. Here, the import of Defendants' trial conduct is reasonably susceptible to several interpretations, including the District Court's, and therefore we sustain it.

---

[7] Although, so far as we have found, we have never held expressly that, in a bench trial, a district court may draw an adverse inference from a missing witness, we see no reason to think that it may not do in its role as factfinder what it may instruct a jury it is authorized to do in the same role. *See Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 700 (S.D.N.Y. 2014) ("Such an inference is equally permissible in bench trials."), *aff'd*, 833 F.3d 74 (2d Cir. 2016). Consistent with our standard of review for findings of fact in bench trials, however, we review a district court's decision to draw (or refrain from drawing) such an inference for clear error, not abuse of discretion. *See Adelson v. Hananel*, 652 F.3d 75, 87 (1st Cir. 2011).

Considering the totality of the factors identified by the District Court as the basis for its decision, we will not disturb its determination that Defendants willfully infringed Plaintiffs' trademark.[8]

## II.    Actual Consumer Confusion and the District Court's Profits Award

Defendants next contend that our case law demands that a Lanham Act plaintiff seeking an award of an infringer's profits prove actual consumer confusion.[9] This argument is foreclosed by our seminal decision in *George Basch Co. v. Blue Coral, Inc.*, 968

---

[8] We further reject Plaintiffs' argument that the Lanham Act's 1999 amendment—which expressly required willfulness to make out a claim for trademark dilution in violation of 15 U.S.C. § 1125(c)—somehow implicitly superseded the requirement that a plaintiff prove willful infringement to support a recovery of an infringer's profits. In the two decades since the amendment, we have consistently adhered to the willfulness requirement as set forth in *George Basch*. *See, e.g., Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 261–62 (2d Cir. 2014). We are bound by the decision of prior panels "until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court." *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004).

Moreover, as recounted by the court in *Romag Fasteners, Inc. v. Fossil, Inc.*, 817 F.3d 782, 789–90 (Fed. Cir. 2016), it is implausible that Congress sought to make any change in the law of trademark infringement, as opposed to trademark dilution, through its 1999 amendment. The statutory language tying a district court's award of an infringer's profits to its application of "principles of equity" was not changed by the amendment, and it is this language that we explored and defined in *George Basch*.

[9] Defendants' arguments on this score are likely waived because at trial they failed to request a jury instruction or special verdict on "actual confusion." This failure precluded the District Court from ruling on whether actual confusion is required to sustain an award of a trademark infringer's profits under the Lanham Act before it submitted the case to the jury. Nevertheless, because the District Court expressed its view on the merits of these arguments in its opinion, *see 4 Pillar Dynasty LLC*, 257 F. Supp. 3d at 619 n.2, we exercise our discretion to address them here in affirming the District Court's judgment.

F.2d 1532 (2d Cir. 1992), in which we addressed the underpinnings of profits awards under the statute. Defendants point to some seemingly contrary statements in an earlier case, *G.H. Mumm Champagne v. E. Wine Corp.*, 142 F.2d 499, 501 (1944) (Hand, *J.*). To dispel any doubts as to this question, we write to clarify that, in our Circuit, a plaintiff need not establish actual consumer confusion to recover lost profits under the Lanham Act.

In *George Basch*, we identified "three categorically distinct rationales" for awarding a successful Lanham Act plaintiff an accounting for the defendant's profits: (1) to avoid unjust enrichment; (2) as a proxy for plaintiff's actual damages; and (3) to deter infringement. 968 F.2d at 1537. As to the unjust enrichment rationale, we drew an analogy to the law of constructive trust and declared that "a defendant becomes accountable for its profits when the plaintiff can show that, were it not for defendant's infringement, the defendant's sales would otherwise have gone to the plaintiff." *Id.* at 1538. We explained that this showing was indistinguishable from "the element of consumer confusion required to justify a damage award" under the Act. *Id.* We further observed that an infringer's profits may be awarded as a "rough proxy measure of plaintiff's damages[,] . . . shift[ing] the burden of proving economic injury off the innocent party, and plac[ing] the hardship of disproving economic gain onto the infringer." *Id.* at 1539. This rationale too, we acknowledged, requires a plaintiff to "show consumer confusion resulting from the infringement." *Id.*

In contrast, our discussion of the third rationale—deterrence—included no mention of actual consumer confusion. Instead, we declared that "a court may award a defendant's profits solely upon a finding that the defendant fraudulently used the

plaintiff's mark." *Id.* "By awarding the profits of a bad faith infringer to the rightful owner of a mark," we reasoned, "we promote the secondary effect of deterring public fraud regarding the source and quality of consumer goods and services." *Id.*

Although our discussion there of the deterrence rationale was somewhat terse, other portions of the *George Basch* opinion strongly suggest our understanding that a court may award a Lanham Act plaintiff an infringing defendant's profits upon a finding of bad faith, without additional proof of actual consumer confusion. For example, we "underscore[d] that in the absence of . . . a showing [of willfulness], a plaintiff is not foreclosed from receiving monetary relief"—in the form of the plaintiff's proved damages, not the defendant's profits—if he can present "proof of actual consumer confusion." *Id.* at 1540. This conditional statement would make little sense if actual confusion were *also* an essential precondition for the award of a defendant's profits on a deterrence rationale. In addition, we observed that a plaintiff that failed to demonstrate *either* actual confusion *or* willfulness would be precluded from asserting "*both* unjust enrichment and deterrence as available grounds for relief." *Id* (commenting on *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 773 (2d Cir. 1984)). This remark, too, suggests that we considered willfulness to suffice for an award of profits under the deterrence rationale.

Our language in *George Basch* may not have been ideally clear and unequivocal in this respect, it is true. Our subsequent rulings applying that language, however, leave little doubt on the question: we have repeatedly affirmed since *George Basch* that a demonstration of actual confusion is not a prerequisite to a profits award. *See Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 261 (2d Cir. 2014) ("Our precedent permits a

16

district court to award a defendant's full profits based solely on deterrence."); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 72 (2d Cir. 1998) ("We have held that an accounting for profits is available, even if a plaintiff cannot show actual injury or consumer confusion."); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749, 753 (2d Cir. 1996) (while "[p]roof of actual confusion is ordinarily required for recovery of damages for pecuniary loss," plaintiff was entitled to recover because "[i]n order to recover an accounting of an infringer's profits, a plaintiff must prove that the infringer acted in bad faith").[10]

Indeed, the rule expressed in *George Basch* and confirmed in our later decisions makes good sense. Whether a Lanham Act plaintiff can demonstrate actual consumer confusion, to be sure, is an important factor in determining whether infringement occurred in the first place. *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961) (Friendly, J.) (listing factors, including actual confusion, to be considered in assessing whether the Lanham Act's "likelihood of confusion" test for infringement is met). The deterrence rationale for disgorgement of profits, however, focuses on the culpability of the willful infringer, and the presence or absence of actual consumer confusion may not always bear a logical connection to an infringer's good or bad faith.

---

[10] This rule is also consistent with that followed by our sister circuits. *See, e.g.*, *Masters v. UHS of Delaware, Inc.*, 631 F.3d 464, 473–74 (8th Cir. 2011) ("Where the jury disgorges profits to remedy a willful infringement that was likely to cause confusion, to cause mistake, or to deceive as to the relationship between the parties' services, equity does not require adherence to the putative judge-made rule requiring actual confusion."); *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000) ("While *actual* confusion may be relevant as evidence of the *likelihood* of confusion (which *is* required for an award of profits . . .)[,] a showing of actual confusion is not necessary to obtain a recovery of profits.").

Moreover, we have long recognized that actual consumer confusion "in fact is very difficult to demonstrate," *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir. 1970), and deserving plaintiffs may find it challenging and costly to make such a showing even in cases of blatant and intentional infringement. Tethering the power of district courts to require a defendant's disgorgement of profits to a plaintiff's showing of actual consumer confusion would hamper courts' ability to deter willful misconduct, contrary to the purposes of the Lanham Act. *See id.* at 664 (observing that "[i]t is essential to deter companies from willfully infringing a competitor's mark" and that disgorgement of profits is "the only way the courts can fashion a strong enough deterrent").

Resisting both these considerations and the repeated and more recent expressions of our Circuit's law, Defendants return again to the statement of Judge Learned Hand in *G.H. Mumm* in 1944: "It is of course true that to recover damages *or profits*, whether for infringement of a trade-mark or for unfair competition, it is necessary to show that buyers, who wished to buy the plaintiff's goods, have been actually misled into buying the defendant's." 142 F.2d at 501 (emphasis added). For several reasons, this passing remark does not compel a different result here. First, *G.H. Mumm* was decided two years before the 1946 passage of the Lanham Act, and therefore is of uncertain use in interpreting the statutory language codified at 15 U.S.C. § 1117(a). Second, Judge Hand's statement was dictum—no award of profits was at issue in *G.H. Mumm*. Rather, the Court's holding was that proof of actual confusion was *not* required to justify *injunctive relief*. *Id.* at 501.

One might object that requiring that a trademark infringement plaintiff prove *only* willfulness on top of infringement to support recovery of an infringer's profits

under the deterrence rationale hollows out the unjust enrichment and proxy-for-damages rationales described in *George Basch*, which require a showing of *both* willfulness and actual confusion for a profits award. This concern, however, is adequately addressed by our Court's observation in *George Basch* that, while "a finding of willful deceptiveness is necessary in order to warrant an accounting for profits . . . it may not be sufficient." 968 F.2d at 1540. Otherwise stated: whatever the rationale adopted, a district court must still balance equitable factors in assessing the propriety of a profits award. These include, but are not limited to: (1) the degree of certainty that the defendant benefited from the unlawful conduct; (2) the availability and adequacy of other remedies; (3) the role of a particular defendant in effectuating the infringement; (4) any delay by plaintiff; and (5) plaintiff's clean (or unclean) hands. *Id.* Thus, when relying on the deterrence rationale to support an award of an infringer's profits in the absence of any evidence of actual confusion, district courts should attend closely to the need to fashion a remedy that may sufficiently deter willful misconduct without giving plaintiffs a lottery-level windfall. Indeed, the Lanham Act calls for just such a determination: "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. § 1117(a). Even when a plaintiff sustains its burden of proving willfulness, courts should consider not only whether an enhanced profits award is appropriate, but also whether the disgorgement of *all* profits attributable to the infringing product is necessary to achieve the desired deterrent effect.

In this case, the District Court addressed the equitable factors identified in *George Basch* and concluded that an award of Defendants' gross profits to Plaintiffs was justified. We review a district court's choice of remedy under the Lanham Act for abuse of discretion only. *Tommy Hilfiger, U.S.A.*, 80 F.3d at 752. In this case, where the evidence of willful conduct was less than overwhelming, where Plaintiffs introduced no evidence of actual consumer confusion, and where Plaintiffs' gross sales actually increased during the years that Defendants marketed infringing products, the District Court could have concluded in its discretion that an award of something less than full profits would have an adequate deterrent effect on these Defendants and future infringers.[11] Nevertheless, applying the deferential abuse-of-discretion standard of review that governs such rulings, we conclude that the District Court acted within the permissible bounds of its discretion by not doing so here.

## III.    Attorney's Fees and Prejudgment Interest

The District Court also awarded Plaintiffs their attorney's fees, relying on the Lanham Act provision that allows such an award to a prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). It further required Defendants to pay Plaintiffs prejudgment interest, an award that is "within the discretion of the trial court and is [also] normally

---

[11] In a puzzling development, as noted above, Defendants' trial counsel stipulated only to the amount of Defendants' gross profits, rather than the generally lower net profit figure. Generally speaking, an award of an infringer's profits under the Lanham Act can be expected to refer to net profits, but the infringer bears the burden "to prove any deductions for its costs from the gross revenues attributable to its [infringement]." *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 7 (2d Cir. 1989). Accordingly, the District Court might have considered whether, even when Defendants' counsel apparently faltered on this score, the deterrence rationale necessitated an award greater than Defendants' net profits.

reserved for 'exceptional' cases." *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990).

In making these awards in 2017, the District Court cited our then-current Lanham Act precedent for the proposition that "[t]he finding of willfulness determines the right to attorney's fees." *Bambu Sales, Inc.*, 58 F.3d at 854; *see also Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir. 2003) ("exceptional cases" include "instances of fraud or bad faith or willful infringement" (citations omitted)). In 2014, however, the Supreme Court interpreted an identical attorney's fee provision found in the Patent Act, 35 U.S.C. § 285. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014). In *Octane Fitness*, without tying the determination expressly to a finding of willfulness, the Court defined such a case as "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 554. The Court called for district courts to be given wide latitude as they engage in a "case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* In that "case-by-case exercise," courts may consider factors including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (citing *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 n.19 (1994)).

During the pendency of this appeal, we ruled that *Octane Fitness*'s flexible definition of the "exceptional case" applies to the attorney's fees provision in the Lanham Act, which mirrors the Patent Act's text in this regard. *Sleepy's LLC v. Select*

21

*Comfort Wholesale Corp.*, 909 F.3d 519, 530–31 (2d Cir. 2018). Defendants now urge us to apply that standard and conclude that "[t]here is nothing special, extraordinary, or unusual about the case, nor was the litigation pursued in an 'unreasonable manner,'" App't Br. 35. They seek a decision made under the *Octane Fitness* standard that the District Court abused its discretion in awarding attorney's fees and prejudgment interest to Plaintiffs here. Plaintiffs respond that any remand would be futile because the *Octane Fitness* standard lowers the threshold for awarding attorney's fees and that, in any event, an award of attorney's fees is warranted under the *Octane Fitness* standard both because of the substantive strength of their case and the unreasonable manner in which Defendants comported themselves during the litigation. Appellees' Br. 52–55.

We decline to make this determination on appeal. Although Plaintiffs are indeed correct that *Octane Fitness* provides district courts with broad discretion to award attorney's fees, it still demands that courts engage in a "case-by-case exercise of their discretion, considering the totality of the circumstances" in determining whether the case is "one that stands out from others," so as to warrant an award of fees. 572 U.S. at 554. This exercise differs appreciably from prior practice. Thus, the District Court observed that, under pre-*Octane Fitness* law, it was unclear "whether the default outcome in a case of willful infringement is to award fees unless there are mitigating factors, or to require aggravating factors in order to justify a fee award." *4 Pillar Dynasty LLC*, 257 F. Supp. 3d at 626. It then appeared to adopt the former approach, awarding fees after Defendants failed to "point to any of the mitigating factors present in the cases that they cite in which courts have declined to award fees." *Id.* Because *Octane Fitness* establishes no presumption—rebuttable or otherwise—that cases involving willful

infringement are necessarily "exceptional," we remand to the District Court to allow it to apply the approach articulated in *Octane Fitness* in the first instance, expressing no view here as to whether the record may support a finding that this case is "exceptional" under this standard.

As to an award of prejudgment interest, our case law draws no distinctions between the showing required to support such an award and that required to justify an award of attorney's fees. *See Am. Honda Motor Co.*, 918 F.2d at 1064. Accordingly, we also vacate the District Court's award of prejudgment interest. On remand, the District Court may, in its discretion, award Plaintiffs prejudgment interest if it determines that the case is "exceptional" under the *Octane Fitness* standard.[12]

## IV. Plaintiffs' Cross-Appeal

On cross-appeal, Plaintiffs argue that the District Court abused its discretion by granting in part Defendants' motion to alter the judgment under Fed. R. Civ. P. 59(e) and removing the trebled portions of its profits award. We review the District Court's decision to amend a judgment for abuse of discretion. *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000).

---

[12] In exercising its discretion on this issue, the District Court may, of course, also consider other factors generally relevant to awards of prejudgment interest, such as "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham Contracting Co. v. Local Union No. 3*, 955 F.2d 831, 834 (2d Cir. 1992).

Under Rule 59(e), "district courts may alter or amend judgment to correct a clear error of law or prevent manifest injustice." *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (internal quotation marks omitted). A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008).

Plaintiffs contend that the District Court erred in granting Defendants' motion because Defendants failed to "point to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). We disagree. After accepting the jury's advisory verdict on willfulness, the District Court forthwith awarded treble profits without any further elaboration. App'x 522–23. While a motion for reconsideration under Fed. R. Civ. P. 59(e) does not properly serve as an occasion to repeat already-defeated arguments, in deciding such a motion a district court still may reconsider a hastily-made earlier ruling if, upon revisiting the non-prevailing party's arguments, the court concludes that it erred.

Because, on Defendants' motion, the District Court in the end correctly applied the standard set forth in 15 U.S.C. § 1117(a), we review its award of profits and elimination of the trebled portion for abuse of discretion only. For substantially the same reasons stated by the District Court in its decision on the issue, *4 Pillar Dynasty LLC*, 257 F. Supp. 3d at 625–27, we agree that Plaintiffs have failed to demonstrate an entitlement to an enhanced profits award. The District Court permissibly exercised its discretion in concluding as much. We therefore affirm the District Court's decision to amend its judgment accordingly.

## CONCLUSION

The judgment of the District Court is AFFIRMED in part and VACATED and REMANDED in part.

A True Copy

Catherine O'Hagan Wolfe, Clerk

United States Court of Appeals, Second Circuit